**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

MASON THERRIAULT

v. Civil No. 23-cv-449-SE-TSM
Opinion No. 2026 DNH 120

NORTHERN N.H. CORRECTIONAL FACILITY ET AL.

**ORDER ON MOTIONS TO AMEND**

Before the court are the filings of self-represented Plaintiff, Mason Therriault, docketed here as Document Nos. 42, 43, 54, 56, 61, 64, 65, 66, and 68. This court liberally construes those filings as motions to amend the complaint. Defendants object. See Doc. No. 57. For the reasons explained below, the court denies the relief requested in Doc. Nos. 64, 65, 66, and 68; and grants in part and otherwise denies Plaintiff's remaining motions (Doc. Nos. 42, 43, 54, 56, 61).[1]

**BACKGROUND**

Therriault is a prisoner in the custody of the New Hampshire Department of Corrections ("DOC") currently housed at the New Hampshire State Prison for Men ("NHSP"). The claims in this case relate to matters that occurred at the Northern New Hampshire Correctional Facility ("NCF"), before Therriault's transfer to the NHSP. The claims presently pending in this case are identified and numbered by this court in the May 6, 2026 Order (Doc. No. 52) as Claims 1-5.

In October 2025, Therriault began filing pleadings concerning incidents occurring at the NHSP. This court opened a new case, see Therriault v. Belanger, No. 25-cv-415-SE-TSM (D.N.H.) ("NHSP Case"), directed the clerk's office to docket Therriault's NHSP-related filings there, and also instructed Therriault that his NCF claims belong in this case, while his NHSP

[1] In a separate Order issued this date, the court directs service upon a new Defendant, Northern New Hampshire Correctional Facility Lt. Sweatt (whose first name is unknown), and directs him and the other Defendants to file their Answer to the new allegations in Doc. Nos. 42, 54, and 61, with respect to Claims 1, 3, 5A, and 6(a)-(b), as numbered in this Order.

claims belong in the NHSP case. See Oct. 20, 2025 Order; see also Feb.9, 2026 Order, NHSP Case.

## DISCUSSION

I. Motions to Amend (Doc. Nos. 42, 43, 54, 56, 61, 64, 65, 66, 68)

A. Standard

A plaintiff seeking to amend the complaint to add new claims or join new defendants must satisfy Rule 15 of the Federal Rules of Civil Procedure. See Amyndas Pharms., S.A. v. Zealand Pharma A/S, 48 F.4th 18, 36 (1st Cir. 2022) (citing Fed. R. Civ. P. 15). Adequate reasons for the denial of leave to amend under Rule 15 include undue delay, bad faith, dilatory motive, futility of the proposed amendment, and prejudice. See Glassman v. Computervision Corp., 90 F.3d 617, 622 (1st Cir. 1996).

"Normally, [futility] means that 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" Id. (citation omitted). To determine whether plaintiff has stated an actionable claim, the court strips away the legal conclusions in the pleading, accepts plaintiff's factual allegations as true, construes reasonable inferences in plaintiff's favor, and then determines "whether the factual allegations . . . set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71, 75 (1st Cir. 2014) (quotation marks and citation omitted). If it is apparent that a proposed new claim would fail because of an affirmative defense conclusively established by plaintiff's pleadings or by matters susceptible of judicial notice, the motion to amend may also be denied as futile. See, e.g., Smart v. Strafford Cty., No. 22-cv-436-PB, 2024 DNH 066, 2024 WL 3860071, at *3, 2024 U.S. Dist. LEXIS 149176, at *7 (D.N.H. Aug. 16, 2024) ("An amended complaint is futile if the relevant statute of limitations has lapsed." (citations omitted)). Cf. Gray v. Evercore Restructuring LLC, 544 F.3d

320, 324 (1st Cir. 2008) (claims may be dismissed on Rule 12(b)(6) motion based on affirmative defenses if facts alleged in complaint, or matters susceptible of judicial notice, conclusively establish elements of affirmative defense).

B. Allegations Relating to Existing Claims

1. Claim 1 – Strip Search and Exposure (Doc. No. 61)

In Document No. 61, Therriault clarifies that Defendant NCF Sgt. Nicholas Arnold "left [Plaintiff] naked and exposed to the whole unit which is a PREA violation," and that Defendant NCF Corrections Officer ("CO") Preston Cyr ordered Arnold to do so. For reasons explained in the court's December 12, 2024 Report and Recommendation (Doc. No. 17) issued in this case, an allegation of a violation of the Prison Rape Elimination Act ("PREA") does not state any federal claim upon which Plaintiff may obtain relief here, as no private right of action arises from a violation of that statute. See Doc. No. 17, at 6 (citing cases). In other respects, the factual allegations in Doc. No. 61 regarding Therriault's strip search are properly added to his Fourth Amendment strip search claim, identified in Doc. No. 52 as Claim 1.

2. Claim 3 – Eighth Amendment Sleep Disruption (Doc. No. 61)

In Document No. 61, Therriault clarifies that he is alleging a loss of sleep amounting to torture in his claim this court numbered as Claim 3. He invokes the Geneva Convention. That Convention does not provide a separate cause of action upon which Therriault can obtain relief here. See Zaahir v. Plappert, No. 25-6021, 2026 U.S. App. LEXIS 16774, at *6 (6th Cir. June 9, 2026) ("the Geneva Convention does not confer a private right of action" (citing Huynh Thi Anh v. Levi, 586 F.2d 625, 629 (6th Cir. 1978))). Otherwise, this court grants the motion to amend Claim 3, to the extent Therriault alleges that the disruption of his sleep was a form of torture, in violation of the Eighth Amendment.

3. Claims 2, 5, and 5A – Medical Care (Doc. Nos. 42, 54, 56, 61)

In Document Nos. 54, 56, and 61, Therriault seeks to name former DOC Medical and Forensics Director Paula Mattis as the sole defendant to the Eighth Amendment medical care claim previously identified by this court as Claim 5, see May 6, 2026 Order (Doc. No. 52) (discussing allegations in Doc. No. 42). Though provided an opportunity to name a specific NCF health care provider with knowledge of his needs as the Defendant to Claim 5, see id., Plaintiff chose to name Mattis, alleging she knew from his request slips that he had vision problems and a need for an eye exam. Doc. No. 61.

An Eighth Amendment medical care claim has both objective and subjective elements. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). To satisfy the objective element, the prisoner must plead facts sufficient to identify an unmet medical need "'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 74 (1st Cir. 2016) (citation omitted).

A showing of deliberate indifference satisfies the subjective prong. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). The prisoner must show that prison officials were aware of circumstances that gave rise to an inference that a serious medical need or other substantial risk of serious harm existed; defendants drew the inference that such a need or risk existed; and defendants did not take reasonable steps to address that need or alleviate the risk. See id. at 828-29. To prevail, the prisoner must show that the defendant's act or omission was purposeful and not merely negligent. See Kosilek v. Spencer, 774 F.3d 63, 83 (1st Cir. 2014).

Plaintiff alleges that prior to his transfer to the NHSP, he submitted many request slips or grievances notifying Mattis about his vision problems and his unmet need for an eye exam. He

asserts he did not receive any appointment for his eyes while at NCF, despite his complaints. Considering the allegations in Document No. 61, as well as the allegations in Document No. 42 summarized in the May 6, 2026 Order (Doc. No. 52), and accepting them as true, the court concludes that Plaintiff states an Eighth Amendment deliberate indifference claim against Mattis upon which relief could be granted, relating to the permanent damage to his vision, summarized here as Claim 5A:

> 5A. DOC Director Paula Mattis violated Plaintiff's Eighth Amendment right to medical care, in that she knew of and failed to take reasonable steps to ensure that Therriault received any care or treatment for his vision complaints at NCF, which resulted in permanent damage to Therriault's vision and his continuing pain, giving rise to her liability under 42 U.S.C. § 1983.

Plaintiff also argues that "a lot" of his medical and dental health needs were neglected at NCF – including, specifically, his complaints relating to "migraines," "withdrawal problems," "muscle, joint, dental, [and] stomach problems." Doc. No. 54, at 2; Doc. No. 61, at 8. Therriault asserts that the eyesight issue is just one example of permanent damage. Doc. No. 54, at 2-3. He further states that he included all of his complaints in request slips or grievances sent to Mattis. Doc. No. 61, at 3 and 8.

Plaintiff has not pleaded the facts necessary to state claims that any of his other health complaints implicated a diagnosed condition requiring treatment for which he received no attention, or that his conditions or complaints were such that any layperson could identify them as requiring medical attention.[2] Thus, Plaintiff has failed to plead the facts needed to show that

[2] To the extent that Plaintiff contends that he sent request slips to the court as proof of these other claims, Doc. No. 61 at 3, the court has not received them. And, even if it had, the court's "role is not to comb through the various documents Plaintiff filed to discern whether he has conceivably alleged . . . a claim or claims against one or more of the defendants." Brewington v. Joyce, No. 2:23-CV-00199-GZS, 2023 WL 4838386, at *2 (D. Me. July 28, 2023), R&R adopted, 2023 WL 5237391 (D. Me. Aug. 15, 2023), aff'd, No. 23-1730, 2024 WL 4209834 (1st Cir. Aug. 19, 2024) (unreported).

Mattis or any other prison official was subjectively aware of and deliberately indifferent to Plaintiff's serious health needs, other than those identified in the claims summarized in this case as Claims 2 and 5A (hypertension, lock-jaw, and vision).

Accordingly, Plaintiff's three-part motion to amend his Eighth Amendment medical care claims against Mattis (Doc. Nos. 54, 56, 61) is granted in part, to the extent that the court allows Claim 5A to proceed against Mattis and dismisses Claim 5 as previously summarized. This court otherwise denies those motions to the extent they seek to add other medical or dental care claims to this case against Mattis (in addition to Claims 2 and 5A) relating to his confinement at NCF.

C. New Excessive Force Claims (Doc. Nos. 54, 61)

1. Standard

In Document Nos. 54 and 61, Plaintiff seeks to add Eighth Amendment excessive force claims against NCF CO Ezekiel Ratliff and NCF Lt. Sweatt for handcuffing and twisting his arms in two separate incidents described in those pleadings. An Eighth Amendment excessive force claim "has two components -- one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Staples v. Gerry, 923 F.3d 7, 13 (1st Cir. 2019) (citation and internal quotation marks omitted).

> To prevail on the objective prong, [the prisoner] must show that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." The subjective prong turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." The "factors" that "are relevant to that ultimate determination" include "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials," "the need for the application of force," "the relationship between the need and the amount of force that was used," "the extent of the injury inflicted," and "any efforts made to temper the severity of a forceful response."

Id. (internal citations omitted).

2. Ratliff

Therriault alleges that on an unspecified date, Ratliff, while escorting Therriault in handcuffs, twisted Plaintiff's wrists behind his back, lifting his right arm up and holding his left arm down, "causing extreme pain." Doc. No. 54, a 2. The pain caused Plaintiff to plead with Ratliff to stop. Ratliff responded that he "wasn't doing anything." Id. Plaintiff then promised to do whatever Ratliff wanted him to do. And then, when Ratliff still did not stop employing the painful maneuver, Plaintiff asserts, he said he would hurt Ratliff unless Ratliff stopped hurting him. And finally, when Ratliff still continued to twist his wrists or arms, Plaintiff could do nothing but cry out in pain. The handcuffing episode lasted for several minutes and left Plaintiff with bruises and torn skin. Therriault adds in Document No. 61 that the incident occurred after Therriault submitted a complaint to prison officials about Ratliff making up his own rules and about Ratliff making a gesture to mock Therriault and others.

Therriault's description of the handcuffing and wrist twisting incident indicates he suffered what he characterizes as "severe pain" for several minutes, as well as injuries that do not appear to have been permanent and did not receive medical attention (bruising and torn skin). "The absence of serious injury" is one factor, but not a dispositive one, regarding whether the use of force violated the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 7 (1992). Sandwiched between Therriault's pleas asking Ratliff to stop, his promise to do anything Ratliff wanted if Ratliff would only stop, and Therriault's outright cries of pain, Therriault's statements about hurting Ratliff could not reasonably be perceived as a threat, where Therriault was in handcuffs within the officer's control, taking all of Therriault's allegations in that regard as true. See Dupard v. Cosio, No. 26-CV-03221-WQH-DEB, 2026 WL 2020463, at *5, 2026 U.S. Dist. LEXIS 154524, at *10 (S.D. Cal. July 13, 2026) (prisoner's allegations of officer's "squeezing,

twisting, and pulling of handcuffs that were already tight along with the twisting of his wrists forcefully backwards," taken as true, state cognizable claim of use of excessive force in violation of Eighth Amendment). Considering the pertinent circumstances and taking Therriault's allegations as true, this court concludes that he states an Eighth Amendment excessive force claim against Ratliff upon which relief can be granted.

3. Sweatt

Plaintiff makes similar allegations about Lt. Sweatt. On an unspecified date, Sweatt called Plaintiff into his office, began "trash talking" Therriault, prompting Therriault to get up to leave. Sweatt then told Therriault he would "tank" him if he tried to leave, and Plaintiff sat back down. Doc. No. 54, at 1. Sweatt proceeded to handcuff Plaintiff, who asserts he was complying with Sweatt's orders at that time. Then, while handcuffing Plaintiff, Sweatt whispered: "We're all sick of your sh**," and then squeezed the handcuffs as tightly as it seemed Sweatt could, using the full weight of his body. Id. Then, Sweatt twisted Plaintiff's wrist, lifting Plaintiff's right arm up while holding his left arm down, causing pain, telling Plaintiff that Sweatt was "allowed to do that." Id. at 2. This incident resulted in bruising and torn skin, which a nurse documented.

The facts alleged as to the handcuffing incidents involving Ratliff and Sweatt state claims that those officers used excessive force, maliciously or sadistically to cause harm, in violation of Therriault's rights under the Eighth Amendment, which this court summarizes and numbers as Claims 6(a) and 6(b) below:

> 6. NCF CO Ratliff and Lt. Sweatt used excessive force, maliciously and sadistically to cause harm to Plaintiff, in violation of Plaintiff's Eighth Amendment rights, giving rise to their individual liability for damages under 42 U.S.C. § 1983, in that:
>
> > a. CO Ratliff, while escorting Therriault in handcuffs, twisted Plaintiff's wrists, lifting his right arm up and holding his left arm down, causing extreme pain that lasted for several minutes, resulting in bruising and torn skin.

b. Lt. Sweatt handcuffed Plaintiff when Plaintiff was complying with Sweatt's orders, squeezing the handcuffs tightly, then twisting Plaintiff's wrists, lifting his right arm up, while holding his left arm down, causing pain, bruising and torn skin.

D. "Ms. Clark," "Ms. Lions," and Focus Termination Claims (Doc. Nos. 43, 65)

Plaintiff asserts that while at NCF, he was terminated from the "Focus" rehabilitation program, even though he was complying with the rules, and his termination rendered him ineligible for parole. He also alleges that statements he made in confidence to his counselor were disclosed to prison officials during that time period. He seeks to add "Ms. Lions" as a Defendant relating to his termination from Focus and "Ms. Clark" as a Defendant to a "breach of confidence" claim.

Therriault's proposed claim regarding his termination from Focus recasts a different Fourteenth Amendment claim that this court previously dismissed upon preliminary review of the original pleadings. Therriault at that time asserted that his dismissal from Focus related to the disclosure of the statements he made to his counselor, which prison officials considered to present a security threat. This court dismissed Plaintiff's claims relating to the disclosures and to his termination from Focus for failure to state a claim upon which relief could be granted.

His attempt to recast his termination from the Focus program as a violation of his rights because it rendered him ineligible for parole is similarly unavailing. Therriault has no right to parole under the federal constitution or New Hampshire law. Harrington v. NCF Warden, No. 24-cv-096-JL-AJ, 2026 WL 1288503, at *2 (D.N.H. Apr. 23, 2026), R&R approved, 2026 WL 1287206 (D.N.H. May 11, 2026). He also has no right to participate in any rehabilitation programs while incarcerated in this state, even if the program is a prerequisite to his parole eligibility. Gigliotti v. York, No. 24-cv-292-SM-AJ, 2025 WL 3463731, at *3 (D.N.H. Nov. 4, 2025) (New Hampshire prisoner's "inability to access [Focus] without which he will be denied

parole[] does not violate the Constitution”), R&R adopted, 2025 WL 3461456 (D.N.H. Dec. 1, 2025). Accordingly, Therriault fails to state any Fourteenth Amendment due process claim upon which relief can be granted relating to his termination from the Focus program, and the court denies his motion to amend, to the extent he seeks to bring a new Fourteenth Amendment claim against Lions relating to his termination.

Therriault’s proposed new “breach of confidence” claim regarding the unauthorized disclosure of information by Clark appears to be substantially similar to a claim Plaintiff previously sought to litigate against “Ms. Marchand.” The court dismissed that claim for reasons including the absence of any federal right of action implicated by that disclosure. See Doc. No. 22 (approving Doc. No. 17 (citing cases)).

For the same reasons, this court denies Plaintiff’s motion to join Clark and to add new federal claims against her relating to the disclosures. Furthermore, to the extent Plaintiff seeks to add new state law claims and to join Clark as a new Defendant to those claims, this court declines to exercise supplemental jurisdiction over those claims, in the absence of any related federal claim pending against Clark in the case. See 28 U.S.C. § 1367.

E. Hearings Officers and Medical Care at NHSP (Doc. Nos. 43, 64, 66, 68)

In Document Nos. 43, 64, and 68, Therriault seeks to add DOC Hearings Officers Barton and Morin as Defendants to claims alleging that Defendants subjected him to retaliatory disciplinary proceedings, in violation of his First Amendment rights, and claims asserting Fourteenth Amendment due process violations arising from those officers’ bias or prejudice, procedural abuses and irregularities in disciplinary hearings, and the decisions the officers rendered in his disciplinary proceedings and imposition of penalties for what Plaintiff characterizes as false, overcharged incidents, or “stacked” charges. All of Therriault’s factual

allegations pertinent to his claims against those Hearings Officers, however, relate to Therriault's current confinement at the NHSP, and not to matters occurring while he was at NCF. The only allegations regarding hearings at NSF were addressed on preliminary review. As the court has previously instructed Therriault, his NHSP claims do not belong in this case. Accordingly, this court denies the motion to amend the pleadings to add new claims against Barton and Morin, without prejudice to his ability to move to amend the NHSP case to include those claims, subject to preliminary review.

Similarly, in Document No. 66, Plaintiff asserts facts about incidents occurring at the NHSP. Those claims do not belong in this case. His motion to add those new claims and to join new Defendants (Doc. No. 66) is denied, without prejudice to his ability to move to add new claims and join new defendants in the NHSP Case, subject to this court's preliminary review there.

F. Defenses, Undue Delay, Prejudice

Defendants assert that they have qualified immunity as to the claims raised in Plaintiff's complaint amendments. Their arguments, however, are insufficiently supported by references to pertinent cases to warrant extensive analysis at this time. Accordingly, without prejudice to Defendants' ability to file a properly supported dispositive motion on the grounds of qualified immunity as to any claim in this case, this court concludes that Defendants have not yet demonstrated that the amendments permitted by this court are futile on that basis.

Defendants further contend that Plaintiff's complaint amendments are unduly delayed and prejudicial to them. The court acknowledges the inconvenience and expense potentially caused by the addition of Claims 5A, 6(a), and 6(b) at this juncture. However, the court is hopeful that those concerns are sufficiently ameliorated by prior and anticipated procedural orders in this case. The

court bifurcated the scheduling order at Defendants' request, prioritizing discovery and motions practice relating to Defendants' exhaustion defense under the Prison Litigation Reform Act ("PLRA"). The scheduling order in this case did not set any deadline for amendments to the pleadings, and discovery and motions practice relating to the merits of Plaintiff's claims has not yet begun. Defendants represent that they produced hundreds of request slips or grievance records to Plaintiff in late 2025 and that they will now be compelled to review and produce more of those records. But Defendants did not file a motion for summary judgment on their PLRA exhaustion defense by the date established for such motions; that issue remains unaddressed and unresolved in this case.

In short, this case remains in a relatively early stage. The case management conference scheduled for September 16, 2026, will provide an opportunity for the court to consult with the parties to set a revised scheduling order for this case that will avoid undue delays and unfair prejudice. Towards that end, this Order represents the court's careful examination of each new or revised claim asserted in Plaintiff's most recent pleadings. Regardless of the dates set at the scheduling conference, the time for amendments to the pleadings has come to an end. Though delay and prejudice are not grounds for denying Plaintiff's motions to amend at this time, no further amendments will be permitted.

II. Remaining Requests for Relief (Doc. Nos. 65, 68)

The hearing requested by Plaintiff in Document No. 65 is denied. The court has already scheduled a case management conference in this case for a date in September 2026, and no other hearing is necessary at this time.

In Document No. 68, Plaintiff asks this court to expunge all of his disciplinary reports arising out of disciplinary hearings over which Barton presided. That request, liberally construed,

seeks relief for claims which are not pending in this case. In addition, Plaintiff fails to allege facts showing that such relief is necessary to avoid irreparable harm to Plaintiff. Accordingly, the injunctive relief requested in Doc. No. 68 is denied without prejudice.

## CONCLUSION

For the foregoing reasons, the court denies the relief requested in Doc. Nos. 64, 65, 66, and 68; and grants in part and otherwise denies the remaining motions (Doc. Nos. 42, 43, 54, 56, 61). Claim 5 is dismissed. Claims 5A, 6(a), and 6(b) are added, and Lt. Sweatt is joined as a new defendant.

The active claims in this case are the following:

1. On August 4, 2023, NCF Sgt. Arnold and NCF CO Cyr, Sr., conducted a strip search of Therriault in his housing pod's bathroom with an open curtain, exposing his naked body to thirty prisoners in his pod, in violation of his Fourth Amendment right not to be subjected to an unreasonable strip search, under the circumstances, absent a legitimate penological purpose, giving rise to their individual liability for damages under 42 U.S.C. § 1983.

2. DOC Director Paula Mattis violated plaintiff's Eighth Amendment right to medical care, in that, with deliberate indifference to plaintiff's unmet serious medical need for treatment for his "hypertension" or "lock-jaw" condition, she failed to ensure he received prescribed medication for six months at NCF, resulting in severe pain and discomfort to the plaintiff, giving rise to her liability for damages under 42 U.S.C. § 1983.

3. With deliberate indifference to a substantial risk of serious harm, NCF Cpl. Burke knew about, enabled, and otherwise failed to take reasonable steps to prevent officers in Therriault's NCF housing unit from slamming doors every hour of every night, disrupting his sleep and amounting to torture, in violation of Therriault's Eighth Amendment rights, giving rise to Burke's liability for damages under 42 U.S.C. § 1983.

4. NCF CO Ratliff filed a multiplicity of false disciplinary tickets, with knowledge of their falsity and an awareness of Therriault's engagement in First Amendment activities, with a motive of retaliation for Therriault's grievances or lawsuits, giving rise to Ratliff's liability for damages under 42 U.S.C. § 1983.

5A. DOC Director Paula Mattis violated Plaintiff's Eighth Amendment right to medical care, in that she knew of and failed to take reasonable steps to ensure that Therriault received any care or treatment for his vision complaints at NCF, which resulted

in permanent damage to Therriault's vision and his continuing pain, giving rise to her liability under 42 U.S.C. § 1983.

6. NCF CO Ratliff and Lt. Sweatt used excessive force, maliciously and sadistically to cause harm to Plaintiff, in violation of Plaintiff's Eighth Amendment rights, giving rise to their individual liability for damages under 42 U.S.C. § 1983, in that:

a. CO Ratliff, while escorting Therriault in handcuffs, twisted Plaintiff's wrists, lifting his right arm up and holding his left arm down, causing extreme pain that lasted for several minutes, resulting in bruising and torn skin.

b. Lt. Sweatt handcuffed Plaintiff when Plaintiff was complying with Sweatt's orders, squeezing the handcuffs tightly, then twisting Plaintiff's wrists, lifting his right arm up, while holding his left arm down, causing pain, bruising and torn skin.

SO ORDERED.

Samantha D. Elliott
United States District Judge

September 2, 2026

cc: Mason Therriault, pro se
Michael P. DeGrandis, Esq.